## PARAGON PAPER COMPANY v. THE STATE.

[No. 1,737. Filed Feb, 23, 1898.]

CRIMINAL LAW.— *Affidavit and Information.*— *Corporations.*— Section 1754, Burns' R. S. 1894, requiring that in a criminal prosecution against a corporation a copy of the indictment or information shall be served and returned with the summons, does not require service of the affidavit upon which an information is based. *pp. 315-317.*

SAME.— *Under What Statute a Corporation is Indictable for Maintaining Nuisance.*— For maintaining a public nuisance a corporation is indictable only by virtue of section 1970, Burns' R. S. 1894; and upon conviction is amenable to punishment as provided in section 2154, Burns' R. S. 1894. *pp. 318-326.*

NUISANCE.— *Discharging Offal Into River.*— *Corporation.*— Where a corporation by the operation of a factory discharges offal into a river, so as to affect injuriously people along the river, such corporation maintains a nuisance within the meaning of section 2153, Burns' R. S. 1894. *pp. 326-330.*

From the Delaware Circuit Court. *Reversed.*

*John Cantwell, S. W. Cantwell, L. B. Simmons, J. W. Ryan, W. A. Thompson, W. H. H. Miller, J. B. Elam* and *F. Winter,* for appellant.

*W. A. Ketcham,* Attorney-General, *Merrill Moores, J. A. Hindman, A. E. Dickey, W. M. Aydelotte* and *Baker & Daniels,* for State.

Paragon Paper Company *v.* The State.

ROBINSON, C. J.—Appellant, a corporation, was prosecuted by affidavit and information for polluting the waters of the Mississinewa river with refuse from its factory.    A trial resulted in a verdict of guilty and a fine of five hundred dollars.    The errors assigned are the overruling of appellant's motion to set aside and suppress the summons and return, its motions to quash the affidavit and information, and its motion for a new trial.    A summons and a copy of the information were served upon appellant.    There was a special appearance and motion by appellant to set aside the summons and copy of the information and service thereof, which motion was overruled.    It is argued by counsel that the term information as used in section 1754, Burns' R. S. 1894, means the information and the affidavit upon which it is based, and that appellant should have been served with a copy of the information and the affidavit.    Section 1754, *supra*, provides that "Such summons, together with a copy of the indictment or information, shall be served and returned in the manner provided for the service of summons upon such corporation in civil actions." The position maintained by counsel derives its principal strength, perhaps, from the concluding part of this section, which provides that, "The corporation, on or before the return day of a summons duly served, may appear by one of its officers, or by counsel, and answer to the indictment or information by motion or plea; and upon its failure to make such appearance and answer, the clerk shall enter a plea of 'not guilty'; and upon such appearance being made or plea entered, the corporation shall be deemed, thenceforth, continuously present in court until the case is finally disposed of."    It is true that, if an affidavit is defective, both the information and the affidavit must fall before a motion to quash; and, in determining the

sufficiency of the information, the court must look to both the affidavit and information. Under the criminal code, an information is the "official statement made to the court by the prosecuting attorney, that a person has been guilty of some designated felony or misdemeanor. It must be filed and signed by the prosecuting attorney, and based upon the affidavit of some competent and reputable person." Section 1747, Burns' R. S. 1894. It must set forth the act charged as an offense. Section 1802, Burns' R. S. 1894. But the language used in various statutes makes it clear that the words "affidavit" and "information" are not included in the word "information." Thus, the affidavit and information may both be amended, and, when the affidavit is amended, it shall be done before the defendant pleads, and be verified; but the information may be amended at any time before or on the trial to conform to the affidavit. Section 1804, Burns' R. S. 1894. A defendant may move to quash an information when it appears, upon the face thereof that the facts stated in the information do not constitute a public offense, or that the information does not state the offense with sufficient certainty. Section 1828, Burns' R. S. 1894.

We think it clear that the information and the affidavit are separate and distinct entities. We see no reason for extending the meaning of the word "information" as used in the section. The service of a copy of the affidavit upon the corporation could have no greater effect than to notify the corporation of the nature of the offense with which it is charged, and, as the information must set forth the act charged as an offense, it fulfills that purpose. In the absence of some sufficient reason or authority, we are unwilling to say that the intention of the legislature in section 1754, *supra,* was that a copy of both the affidavit and

information should be served on the corporation. We see no reason for extending the statute to cover what was manifestly not intended to be covered, and which is not necessary to prevent the defendant's rights from being prejudiced.     See *Rice* v. *State*, 15 Ind. App. 427.

In the case of *Lindsey* v. *State*, 72 Ind. 39, cited by appellant's counsel, the appellant was prosecuted upon an affidavit and information for a felony. The affidavit failed to state that appellant was in custody on the charge for which he was prosecuted, and that the grand jury was not in session. The information contained these averments.     A motion in arrest of judgment, based upon the alleged insufficiency of the affidavit, was overruled.     The statutory causes for arrest of judgment were that the grand jury which found the indictment had no legal authority to inquire into the offense charged, by reason of it not being within the jurisdiction of the court, and that the facts stated do not constitute a public offense. It was held that, under that particular statute, the affidavit and information constitute "in a certain generic sense," the indictment, and that the judgment may be arrested for the want of any material jurisdictional averment either in the affidavit or information.     And in the case of *Hoover* v. *State*, 110 Ind. 349, it is held that the affidavit and information take the place of an indictment, and are, "in a certain generic sense," the indictment, but the case recognizes the affidavit and information as distinct entities.     The motion to set aside the summons and service was properly overruled.

This prosecution was based on section 2154, Burns' R. S. 1894, which reads as follows: "Whoever erects, continues, uses or maintains any building, structure, or place for the exercise of any trade, employment,

or business, or for the keeping or feeding of any animal, which, by occasioning noxious exhalations or noisome or offensive smells, becomes injurious to the health, comfort or property of individuals or the public; or causes or suffers any offal, filth or noisome substance to be collected or to remain in any place, to the damage or prejudice of others or the public; or obstructs or impedes, without legal authority, the passage of any navigable river, harbor or collection of waters; or unlawfully diverts any stream of water from its natural course or state, to the injury of others; or obstructs or encumbers, by fences, buildings, structures, or otherwise, any public grounds; or erects, continues, or maintains any obstruction to the full use of property, so as to injure the property of another or essentially to interfere with the comfortable enjoyment of life, shall be fined not more than five hundred dollars/nor less than ten dollars: *Provided,* That nothing in this section shall prevent the board of trustees of towns and the common councils of cities, from enacting and enforcing such ordinances within their respective corporate limits as they may deem necessary to protect the public health and comfort."

Counsel for appellant earnestly insist that a corporation is not indictable under the above section, and that a corporation is only indictable by force of section 1970, Burns' R. S. 1894, which provides, that "Corporations may be prosecuted by indictment or information, for erecting, continuing, or maintaining a public nuisance, or for obstructing a public highway or a navigable stream," and that if appellant was amenable to punishment for the acts charged it is by virtue of section 2153, Burns' R. S. 1894, which provides that "Every person who shall erect, or continue and maintain any public nuisance, to the injury of

any part of the citizens of this state, shall be fined not exceeding one hundred dollars."

It is insisted on behalf of the State, that a corporation may be prosecuted under section 2154, *supra*, and is amenable to the punishment therein provided, and that it is sufficiently charged in the affidavit to bring the offense in question within the first and second clauses of that section.

As appellant is not charged with having obstructed a public highway or a navigable stream, the prosecution can be maintained only upon the ground that the acts charged constitute a public nuisance. It is only by virtue of section 1970, *supra*, that a corporation is liable for a criminal prosecution. Section 290, Burns' R. S. 1894, provides that "Whatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action." While the above statute, in the definition of a "nuisance," has not indicated any distinction between public and private nuisances, yet a distinction is made in the adjudged cases. Thus it has been held that a right to maintain a strictly private nuisance upon the land of another may be acquired by prescription; but a right to maintain a public nuisance cannot be acquired by prescription. *Sherlock* v. *Louisville, etc., R. W. Co.* 115 Ind. 22. In *State* v. *Taylor*, 29 Ind. 517, it is held that our statute gives as accurate a definition of the term "nuisance" as understood at common law as can be found elsewhere, and after quoting the statute defining a nuisance the court said: "If the injury were limited to an individual, it gave a private right of action; if it affected the public, it was the subject of a public prosecution."

It is argued that the legislature has declared the

offenses enumerated in section 2154 to be public nuisances. Section 2154 is section 157 of an act, entitled "An act concerning public offenses and their punishment." Immediately preceding section 157 in the published acts of 1881 is the word "nuisances" in brackets, and at the left of the top of the section, and on the margin of the page, are the words "public nuisance." In the enrolled bill on file in the office of the Secretary of State, following section 156 of the act, and immediately preceding section 157, are the words, "Offenses against public health." Immediately following these words is the word "nuisances." Then follows section 157. While it would be proper to look to such words in an act to aid in determining its meaning, yet, such words so used, could not be held to declare that each of the offenses named is a nuisance. All the section undertakes to do is to set out certain offenses and provide a punishment, and it does not undertake to declare each of them to be a nuisance. Even if we should admit that these words in the original act as passed by the General Assembly make each of the offenses enumerated in section 157 a nuisance, yet there is nothing to indicate which are public nuisances and which are private. In order to hold a corporation liable for committing all of the offenses named in section 2154 we must say that the word public, used in section 1970, means both public and private, or in other words, that it means nothing, and that a corporation may be prosecuted for maintaining a nuisance.

The case of *City of Valparaiso* v. *Moffitt*, 12 Ind. App. 250, 54 Am. St. 522, cited by appellant's counsel, was a civil action against the city for damages resulting from the pollution by the city of a natural water course. In that case it was held that a municipal corporation is liable in a civil action for erecting and

maintaining a nuisance, the same as a natural person. It is true the opinion states that by the statute it is made a public nuisance to commit certain offenses set out in section 2154, but, as that question was not involved in the case, the statement must have been made simply by way of illustration. But, even if it was held in that case that the offenses enumerated in that section are public nuisances, it is not held that a corporation indicted for the commission of such offenses should be punished under that section. That question was in no sense involved in that case.

It cannot be said that a person who maintains a place which, by occasioning noxious exhalations or offensive smells, becomes injurious to the health, comfort, or property of two individuals, and no more, could be punished for maintaining a public nuisance. And yet such a person could be punished under section 2154. Nor could a person who maintains any obstruction to the full use of property, so as to injure the property of another, be punished for maintaining a public nuisance. If this act is a nuisance, it is a private nuisance, and the above act makes it punishable by fine. The legislature has in the past declared certain acts to be common or public nuisances, and this was done by the express words of the act. See R. S. 1843, pp. 974, 975, 2 Gavin & Hord, p. 461, 2 Davis R. S. 1876 p. 462. And while it is clear that some of the offenses named in section 2154 are public nuisances, yet it cannot be said that the legislature has declared all the offenses set out in that statute to be public nuisances.

We think it is clear that a corporation could not be punished for committing some of the offenses named in that section. If a corporation commits any one of the offenses charged in that section which

would be a public nuisance, it may be punished. But the corporation would be punishable, not for doing a specific act made by statute a criminal offense for which a punishment is provided, but it would be punishable for maintaining a public nuisance. The statute has made a corporation criminally liable for three offenses only, and has fixed the punishment for each. It has not said that a corporation may be prosecuted for polluting a water course in the manner charged in the affidavit, and a corporation becomes punishable for such an act only when the acts charged amount to a public nuisance, and for that a penalty is prescribed. The statute marks out public nuisances as a crime, just as it has obstructing a highway or a navigable stream. See *State* v. *Berdetla*, 73 Ind. 185, 38 Am. Rep. 117; *State* v. *Sullivan County Agr. Soc.*, 14 Ind. App. 369.

It is argued that such a construction would result in imposing one penalty upon a corporation, and a greater penalty upon an individual for the same offense. The legislature declared in 1852 that "crimes and misdemeanors shall be defined, and punishment therefor fixed by statutes of this state and not otherwise." Section 237, Burns' R. S. 1894. A crime is the doing of that which a penal code forbids to be done or omitting to do what it commands. A necessary part of the definition of every crime is the designation of the author of the offense, upon whom the penalty is to be inflicted. It has been held that the provision of the civil code that the word "person" shall extend to bodies politic and corporate, does not apply to the criminal code. *State* v. *President, etc.*, 23 Ind. 362. So that when a criminal statute does not expressly apply to corporations it does not create an offense for which a corporation may be punished. And when a statute designates an act of a corporation

as a crime, and prescribes punishment therefor, it creates a criminal offense which otherwise would not exist, and which can be committed only by a corporation. The designation of the corporation enters into the definition of the crime; just as a county treasurer converting public funds to his own use is guilty of embezzlement, while a stranger taking the same funds is guilty of a different crime, or an affray is an offense committed by two or more persons, or a riot is an offense committed by three or more persons. or profanity is an offense committed by a person over fourteen years of age. In these instances the designation of the person or persons committing the offense is clearly a part of the definition of the offense. So that the criminal offense which the statute says may be committed by a corporation cannot be committed by an individual, for the reason that one of its essential ingredients is that it be committed by a corporation.

To hold that corporations may be punished under section 2154 makes it necessary to say that a part only of the section may be held to apply to a certain class of persons and that the remainder of the section does not apply. If the legislature had not expressly provided a penalty for a corporation maintaining a public nuisance, such construction might have some reason to support it. We see no better reason for saying that a corporation, prosecuted for an offense which is a public nuisance, should receive the greater punishment provided in section 2154 instead of the lesser punishment provided in section 2153, than for saying that an individual who is prosecuted for obstructing a public highway, an act declared to be a public nuisance, could insist that he should receive the lesser punishment provided in section 2153, instead of the greater punishment provided in section 2043.

It is not contended that section 1970 would authorize a prosecution against a corporation for maintaining a mere private nuisance.   Until the legislature so declares, we cannot say that some of the offenses named in section 2154 are public nuisances, and until the legislature does so declare we must hold, under the rulings of the Supreme and this court, that some of the offenses therein charged are private nuisances. There is nothing in the language of the statute to indicate that the legislature intended that some parts of the section should apply to corporations while others should apply only to natural persons.    The legislature, and not the courts, must say what shall be a crime and who shall be punished for its commission.

It has long been held that penal statutes must be construed strictly, and that the legislature, and not the court, must define a crime and fix the punishment.   In *United States* v. *Wiltberger*, 5 Wheaton 93, Chief Justice Marshall says:   "The intention of the legislature is to be collected from the words they employ.   Where there is no ambiguity in the words, there is no room for construction.   The case must be a strong one, indeed, which would justify a court in departing from the plain meaning of the words, especially in a penal act, in search of an intention which the words themselves did not suggest.   To determine that a case is within the intention of a statute, its language must authorize us to say so.   It would be dangerous, indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity, or of kindred character, with those which are enumerated.   If this principle has ever been recognized in expounding

criminal law, it has been in cases of considerable irritation, which it would be unsafe to consider as precedents forming a general rule for other cases."

In *Pence* v. *State*, 110 Ind. 95, it was held that proof of the taking of a buggy, with intent to destroy the same, would not warrant a conviction for larceny, for the reason that the essence of the statutory offense of larceny is intent to carry away and appropriate. And in *Robb* v. *State*, 52 Ind. 216, it is held that a conviction of a person suffering his horse to be run in a horse race cannot stand where the evidence showed that the horse belonged to some person other than the person charged with the offense.

In the case of *Harrison* v. *Stanton*, 146 Ind. 366, it was insisted by counsel that a person who is permitted to sue *in forma pauperis* should be permitted to contest a will without giving the statutory bond; that the provisions of the section permitting a person to sue as a poor person ought to be imported by construction into the statute providing for the contest of wills, and ingrafted onto it as an exception relieving a poor persons from filing the required bond.   The court said:   "Were we to yield to the insistence of appellant, we would have to eliminate from the statute a feature imposed by the legislature as an essential condition upon the right conferred, and one which limits the very power of the court to proceed in an action instituted to annul a will.   This would be judicial legislation instead of judicial construction.   *   *   *   To grant a statutory remedy upon a condition with which both the rich and the poor alike must comply when they attempt to exercise such right, is a matter wholly within the province of the legislature, and if the remedy is conditioned upon a bond being given, and for this reason, it can be said to work an injustice or hardship upon the poor suitor, our answer to this

contention must be 'ita lex scripta est'—the law is so written and must be accepted and applied by the court as enacted." See Hamilton v. Jones, 125 Ind. 176; United States v. Reese, 92 U. S. 214; United States v. Brewer, 139 U. S. 278.

.We are not unmindful of the rule that penal statutes must not be so strictly construed that the purpose of the legislature will be defeated, but the words employed must be understood in the sense in which the legislature obviously used them. In the case at bar the question is whether we shall apply a statute that is plain in its terms, or whether we shall extend its scope over matters about which there is doubt. The legislature has plainly indicated for what offenses a corporation may be punished, and has fixed the punishment, and so far as that statute designates a crime and its punishment it needs no construction. It is only when it is attempted to import its provisions into another section, that any question of construction arises.

It is insisted that the affidavit is insufficient, and that the motion to quash should have been sustained. It is argued that the affidavit is not good under either the first or second divisions of section 2154.

From what we have already said, it follows that the question to be determined is not whether the affidavit is good under either of these divisions of section 2154, but whether the acts charged amount to a public nuisance. Maintaining a public nuisance is a crime, and the affidavit is not necessarily bad because it might fail to come within the offenses set out in that section. If appellant is maintaining a public nuisance, it is subject to prosecution whether it has violated any of the provisions of the above section or not, and, in order to sustain such a prosecution, it is not necessary that the legislature should have char-

acterized the particular acts charged as a crime and fixed a punishment therefor. The inquiry is whether the acts charged amount to a public nuisance, as defined by the statute or the common law.

The affidavit charges, in substance, that appellant operated a paper mill factory on the Mississinewa river, a natural stream of water; that said river flowed downward through Delaware county from said factory a distance of more than eight miles, at divers fords and bridges and across public highways whereon the public traveled to and fro, and within two miles of divers other public highways, and over and through and near to the cultivated lands and productive farms, which are inhabited by divers citizens, and near to and within two miles of the homes, habitations, and abiding places of divers citizens, and divers churches and schoolhouses wherein the public assembled; that on said lands and farms were large numbers of all kinds of domestic animals; that appellant in the exercise of said business, unlawfully and injuriously occasioned noxious exhalations and noisome and offensive smells, injurious to the health, comfort, and property of the public and of said citizens near thereunto residing; that appellant unlawfully and injuriously caused, suffered, and permitted, and still does cause, suffer, and permit, offal, filth, and noisome substances and fluids to be collected and deposited, and remain in said river, and caused the same to flow into said river, and along and down said river, in and with the water thereof, and to settle and be deposited and remain upon the banks and bed of said river, forming a noxious, noisome, and offensive slime adjacent to said factory, and downward therefrom, along the course of said river, a distance of eight miles, whereby the water in said river then and there was polluted, and rendered noxious, impure, poison-

ous, offensive, discolored, stinking, and unwholesome for man and beast, and whereby the atmosphere for a distance of two miles on each side of said river, and for a distance of eight miles along the course of said river, downward from said place of said business, then and there was rendered impure, noxious, offensive, poisonous, and unwholesome for man and beast; that because of such pollution said water was unfit for use of said citizens owning farms and lands, to their injury and damage, and to the injury, damage and depreciation in value of all of said farms and lands, and by reason of such pollution large numbers of fish were killed, and on the bed and banks of said river became rotten and stinking, to the discomfort, injury, annoyance, damage, and common nuisance of the public and said citizens, and that by reason of said atmosphere being rendered noxious and unwholesome as aforesaid, and by reason of the rottenness and stinking of said fish, the public and citizens, in their said homes, churches, and school-houses, and traveling upon said highways, were injured and damaged, and made unhappy and uncomfortable, and to the injury of the health, comfort, and property, and to the damage and prejudice, of said citizens and the public, all then and there to the great damage and common nuisance of all the people.

Whether the affidavit is tested by the definition of a nuisance, as found in the principles and precedents of the common law, or by the definition found in the statute, it avers facts which amount to a public nuisance, for which the statute has provided a punishment. It charges the continuance and maintenance of a public nuisance, to the injury of part of the citizens of the State, and is good under section 2153, Burns' R. S. 1894. It is perhaps true that the court could not make the abatement of such a nuisance a

part of the judgment of conviction, for the reason that the factory itself is not the nuisance complained of, but the nuisance consists in the manner in which the factory is operated. *Bloomhuff* v. *State*, 8 Blackf. 205.

The affidavit charges but one offense, and that is that appellant so conducts its trade and business by discharging offal and refuse into the river that it produces the evil effects complained of. The people who are alleged to be injuriously affected are those living along the river and those traveling upon highways which run across the river. It does not appear that injury resulted to any one living near the factory itself. The factory itself is not a nuisance *per se*, and there are no averments in the affidavit that it is in a public place, or that people reside near it, or any other circumstances which show that the public was affected by it. This fact clearly distinguishes the case at bar from the cases of *Knopf* v. *State*, 84 Ind. 316, and *State* v. *Weil*, 89 Ind. 286. Thus, in the case of *Mains* v. *State*, 42 Ind. 326, 13 Am. Rep. 364, the affidavit was held bad for failing to show that the place charged to be a nuisance was situate in any public place, or near any public street or highway, or that any person resided near thereto, or was in the habit of passing thereby, and it was held that, as the place was not a nuisance *per se*, these facts must be averred.

So, in the case at bar, there is not enough in the affidavit to show that the factory itself is a nuisance, but the nuisance results only from the manner in which it is operated, and the particular manner is the pollution of the river with offensive and poisonous substances from the factory. If all the averments of the affidavit concerning the pollution of the river and the evil results flowing therefrom be eliminated, there is not sufficient left to charge an offense. *Her-*

*ron* v. *State*, 17 Ind. App. 161; *Henry* v. *State*, 113 Ind. 304.

It is not charged that the buildings or place occasioned noxious exhalations and offensive smells, or became injurious to the health, comfort, or property of individuals, or the public living near the factory itself, but that appellant in the exercise of the business of paper making occasioned noisome and offensive smells; and the affidavit then particularizes the manner in which these offensive smells were occasioned, that is from the pollution of the river, to the injury of persons living along and near to the river. There was no error in overruling the motions to quash the affidavit and information.

Other alleged errors are discussed, but we deem it unnecessary to extend this opinion with a discussion of them, as the questions presented may not arise on another trial. The trial in the circuit court proceeded throughout on the theory that appellant was prosecuted under section 2154, and subject to the punishment therein provided, and the court so instructed the jury. One of the errors assigned is the overruling of appellant's motion for a new trial, and one of the grounds on which a new trial was asked was that the verdict is contrary to law. The motion for a new trial should have been sustained. Judgment reversed, with instructions to sustain appellant's motion for a new trial.