## CANNON *et al. v.* MERRY *et al.*

1. Except in a case falling under the provisions of the act of December 19, 1899, providing for abating or enjoining " any place commonly·known as a 'blind tiger,' " equity will not enjoin the maintenance of a public nuisance in a given municipality, at the instance of one who suffers no injury or inconvenience therefrom save such as is common to all residents thereof; and the more especially is this true if the acts alleged to constitute such nuisance be indictable.
2. A dispensary where intoxicating liquors are openly and publicly sold in a town, in good faith, under color of lawful authority, though in fact operated in violation of law, is not "what is commonly known as a blind tiger," subject to be abated or enjoined under the provisions of the act of December 19, 1899.

LITTLE and COBB, JJ., dissenting. A dispensary for the sale of intoxicating liquors, established and operated under an ordinance of a municipal corporation, which is void for want of authority in the municipal authorities to pass such an ordinance, is, within the meaning of the act of December 19, 1899 (Acts 1899, p. 73, Van Epps' Code Supp. § 6654 et seq.), a " blind tiger " and a public nuisance, and its operation should be enjoined under the provisions of that act.

Argued June 27,—Decided August 9, 1902.

Petition for injunction. Before Judge Spence. Mitchell superior court. April 25, 1902.

*W. A. Covington* and *J. D. McKenzie*, for plaintiffs.
*J. H. Scaife* and *Sam. S. Bennet*, for defendant.

FISH, J.    H. C. Cannon, M. C. Kinney, A. Palmer, D. F. Pickeron,
and W. H. Taylor filed their equitable petition against H. H. Merry,
J. J. Mize, J. L. Hand, W. S. Hill, C. M. Baggs, and J. E. Nelson.
The petition alleged, in substance, that the plaintiffs were residents
of the town of Pelham and taxpayers therein ; that the defendants
were residents of the town ; that Merry was mayor, and the other
defendants, except Nelson, were councilmen ; that the mayor and
council, in February, 1902, passed an ordinance seeking to estab-
lish a dispensary in the town, and in pursuance of the ordinance
elected the defendants, Baggs, Mize, and Nelson, dispensary com-
missioners ; that under the supervision of such commissioners a
dispensary was being operated in the town by such dispensary offi-
cers, where spirituous and intoxicating liquors were daily sold ;
that the mayor and council had no authority, under the charter of
the town or under the laws of the State, to pass an ordinance es-
tablishing a dispensary for the purpose of buying and selling spirit-
uous and intoxicating liquors in the town, and that the ordinance
passed for such purpose was unlawful and void ; that the charter,
which authorized the mayor and council to regulate the sale of
spirituous and intoxicating liquors, required the written consent of
a two-thirds majority of all the freeholders within a radius of three
miles of the S., F. & W. Railway depot in the town of Pelham be-
fore the municipal authorities could issue a license to any person
to conduct the sale of such liquors therein ; that neither the com-
missioners nor any other officer of the dispensary had ever complied
with the charter provisions requiring the written consent of such
freeholders ; and that the sales of the liquors, which were being
made by the officers of the dispensary, were without lawful right
or authority, and such traffic was a public nuisance, hurtful to the
peace, quiet, health, and morals of the community in which the
sales were being made.    The prayer of the petition was, that the
defendants, their agents and employees, be enjoined " from further
operating said dispensary in buying and selling spirituous and intox-
icating liquors in said town of Pelham."    The defendants, in their
answer, denied that the mayor and council had no authority to
pass the ordinance referred to in the petition and to establish a dis-
pensary in the town, and also denied that the liquors were being

unlawfully sold and that the sale of them was a public nuisance, as charged in the petition. The other allegations of the petition were admitted. The court refused to grant an injunction upon the interlocutory hearing, and the plaintiffs excepted.

1. It will be seen that the application for injunction in this case is based upon the theory that the operation of a dispensary wherein spirituous and intoxicating liquors are sold, in the town of Pelham, is a public nuisance which the petitioners, as residents of such town, have the right to enjoin. Granting that the mayor and council of the town of Pelham had no authority, under its charter or under any law, to establish a dispensary for the sale of spirituous and intoxicating liquors in such town, or to authorize any one else to operate such a dispensary in the town, and that the operation of the same was a public nuisance, the plaintiffs, in our opinion, were not entitled to an injunction restraining the operation of such a dispensary as a public nuisance, unless it was what is commonly known as a "blind tiger," and therefore subject to be abated or enjoined under the provisions of the act of December 19, 1899 (Acts 1899, p. 73, Van Epps' Code Supp. § 6654). If the operation of this dispensary is, as alleged, a public nuisance, it is manifest from the petition that it is one from which the plaintiffs suffer no injury or inconvenience save such as is common to all other residents of the town. Therefore, unless it is what is commonly known as "a blind tiger,"— the right to abate or enjoin which is, by the above-mentioned act, given to any citizen of the county wherein it may be located, it is a nuisance which can not be enjoined on behalf of the plaintiffs, under the case made by their petition. Generally a public nuisance gives no right of action to any individual, but must be abated by process instituted in the name of the State. Civil Code, § 3858. "One seeking to enjoin a public nuisance must show some special injury peculiar to himself and independent of the general injury to the public." 1 High, Inj. § 762; 2 Ib. §§ 1301, 1321. "And to sustain an action by a private individual against a public officer, it must not only appear that the duty violated was one owing to individuals, but the individual suing must show some reason why he singles himself out as the party injured. In other words, he must show that he, as distinguished from individuals in general, has suffered some special and peculiar injury from the wrongful act of which he complains." Mech. Pub. Off. § 600. See also

Throop, Pub. Off. §§ 549, 816. If in the operation of the dispen-sary the defendants should render themselves liable to indictment for the illegal sale of spirituous and intoxicating liquors, it is clear that a court of equity will not enjoin them from the commission of the crime, when it does not appear that any property rights of the plaintiffs will be affected thereby. *Paulk* v. *Sycamore*, 104 *Ga.* 24; *O'Brien* v. *Harris*, 105 *Ga.* 732.

2. Counsel for plaintiffs in error contend that if the defendants were operating the dispensary in violation of law, it was a " blind tiger," or nuisance, and should be abated or enjoined as such, un-der the provisions of the above-mentioned act of 1899. The title to that act is: " An act to declare as a nuisance any place where spirituous, malt, or intoxicating liquors are sold in violation of law, to provide for abating or enjoining such nuisance, and for other purposes." The act, however, is not as broad as its title. It de-clares: " That from and after the passage of this act, any place commonly known as a ' blind tiger,' where spirituous, malt, or in-toxicating liquors are sold in violation of law, shall be deemed a nuisance, and the same may be abated or enjoined as such, as now provided by law, on the application of any citizen or citizens of the county where the same may be located." See sec. 1 of the act. Whatever a " blind tiger," as " commonly known," may be, we are quite sure that the dispensary in question, which was being openly and publicly operated in the town of Pelham, in pursuance of an ordinance of the town, which those engaged in operating the dis-pensary evidently thought to be valid, was not such a place as is commonly known as a " blind tiger," even though spirituous, malt, and intoxicating liquors were there being sold in 'violation of law. The Standard Dictionary defines "blind tiger" to be, " A place where intoxicants are sold on the sly." " Sly " means, " Artfully dextrous in doing things secretly; cunning in evading notice or de-tection." " Done with or marked by artful secrecy." Ibid. We are clearly of opinion that a place where intoxicating liquors are openly and publicly sold, in good faith, under color of lawful au-thority, is not what is " commonly known " as a " blind tiger," al-though the sales of such liquors therein may, in fact, be in viola-tion of law.

*Judgment affirmed. All the Justices concurring, except Lewis, J., absent, and Little and Cobb, JJ., dissenting.*

COBB, J. What is known as the "blind tiger law" is an act passed in 1899 and in the following words:

"An act to declare as a nuisance any place where spirituous, malt, or intoxicating liquors are sold in violation of law, to provide for abating or enjoining such nuisance, and for other purposes.

"Section I. Be it enacted by the General Assembly of Georgia, that, from and after the passage of this act, any place commonly known as a 'blind tiger,' where spirituous, malt, or intoxicating liquors are sold in violation of law, shall be deemed a nuisance, and the same may be abated or enjoined as such, as now provided by law, on the application of any citizen or citizens of the county where the same may be located.

"Sec. II. Be it further enacted, that if the party or parties carrying on said 'nuisance' shall be unknown or concealed, it shall be sufficient service in the abatement or injunction proceedings under this act to leave the writ or other papers to be served, at the place where such liquor or liquors may be sold, and the case or cases may proceed against 'parties unknown,' as defendants.

"Sec. III. Be it further enacted, that the court shall have authority under this act to order the officers to break open such 'blind tiger' and arrest the inmates thereof, and seize their stock in trade, and bring them before him to be dealt with as the law directs."

Sec. IV. Repeals conflicting laws.

When this act is construed as a whole and in the light of its title, it is manifest that the legislative purpose was to declare places where intoxicating liquors are sold in violation of law to be a public nuisance, and vest in the courts the power to deal with them as such; a court of law to have authority to abate them by the proceedings usual in abatement of such nuisances; and a court of equity to abate them by the writ of injunction. What is commonly known as a "blind tiger," within the meaning of this law, is a place where intoxicating liquors are sold without authority of law. It is immaterial whether the sale is open or secret, if the person selling has no authority to sell from any one empowered under the law of this State to give such authority. In such a case the place where the liquor is sold is a "blind tiger" within the meaning of that term as it is generally understood. This may not be the meaning given that term by the lexicographers, but it is the ordinary, popular meaning of the term. It is evident from the title of the act that

the General Assembly used the term in that sense. The mere fact that the act authorizes proceedings against a "blind tiger," where the person operating it is concealed or unknown, should not be made to limit the scope of the act so as to include only "blind tigers" of this description. The legislation is directed against all "blind tigers"—all persons who sell liquors in violation of law, whether the sales be conducted covertly or on the sly, or be made in an open manner showing an utter disregard of law. I have found only one case where the term "blind tiger" has been judicially defined. In Schulze *v.* Jalonick, 18 Tex. Civ. App. 299, Mr. Chief Justice Fisher says: "A 'blind tiger' we find to be a place where such intoxicating drinks as are prohibited by the local option law are disposed of or sold in violation of that law." That was an action for libel where the plaintiff alleged that the defendant had charged him with running a "blind tiger." The defendants in the present case were not operating a dispensary; they were maintaining a public nuisance, and they should have been restrained from a further maintenance of it. It is not necessary to express any opinion in this case on the question as to whether one who holds a license to sell liquor from an authority empowered to grant such license, but which was irregularly granted, is liable to be proceeded against under the "blind tiger law." It may be that under such circumstances there would be such color of authority that the holder of such irregular license would be relieved from the penalties of the law until the license is revoked. However, upon that subject I now express no opinion. In the present case there was no authority or color of authority. See *Mayor* v. *Putnam*, 103 *Ga.* 111; *Barnesville* v. *Murphey*, 113 *Ga.* 780. The whole proceeding was in direct violation of and in utter disregard of all law, and those in charge of the so-called dispensary should have been dealt with in the manner that the law declares the lawless should be treated. The act was remedial in its nature, and was intended to provide instruments for the suppression of a great evil, and its intended beneficent effects should not be destroyed or even lessened by giving the words a too narrow and contracted meaning. The injunction prayed for should have been granted.

I am authorized by Mr. Justice Little to say that he concurs in the views above presented.