## THE STATE *v.* TABLER ET AL.

[No. 5,492. Filed January 6, 1905.]

1. NUISANCE. — *Sales of Intoxicating Liquor. — License. — Common Law.*—There is no statute in Indiana making a place where intoxicating liquors are sold a nuisance, *per se,* but a license does not protect one from his common-law liability to any individual damaged by unlawful practices on his premises. p. 396.
2. SAME.—*Public.—What is.*—Any nuisance is a "public nuisance" within the meaning of Section 2153 Burns 1901, §2605 R. S. 1881, if it annoys such part of the public as necessarily comes in contact with it. p. 396.
3. WORDS AND PHRASES.—*"Blind Tiger."*— A "blind tiger" is a place in which intoxicating liquors are sold in violation of law. p. 397.
4. INDICTMENT AND INFORMATION.—*Blind Tiger.—Public Nuisance.*— An indictment, which charges that defendants had control of a building; that screens, partitions, blinds and other paraphernalia were ar-

ranged therein for the purpose of selling liquors unlawfully; that liquors were sold therein without license; that by reason thereof men were made drunk; that such men congregated therein and on the street thereby and blocked the sidewalk and used profane, obscene and indecent language, all to the annoyance of the citizens of the town, shows a violation of the criminal statute against maintaining a public nuisance. p. 397.

5. NUISANCE.—*Public.*—*Place Arranged for Violations of Law.*—The maintenance of a public place, equipped with devices intended to make the violations of the law easy and safe from criminal prosecution, and in which it is well known from its results that the laws are systematically violated, is "offensive to the senses" and is a public nuisance, as well as a menace to the community. p. 398.

From Harrison Circuit Court; *C. W. Cook,* Judge.

Prosecution by the State of Indiana against Harriet Tabler and James R. Tabler for maintaining a public nuisance. From a judgment quashing the indictment, the State appeals. *Reversed.*

*John H. Luckett,* Prosecuting Attorney, *George W. Self, William Ridley* and *R. S. Kirkham,* for the State.
*Major W. Funk,* for appellees.

COMSTOCK, C. J.—Appellees were indicted for maintaining a public nuisance. A motion to quash was sustained by the trial court, and from that ruling appellant appeals.

The indictment charges that the appellees, Harriet and James Tabler, on the 1st of August, 1902, at Harrison county, State of Indiana, near unto the dwelling and business houses of divers inhabitants of the town of Corydon, in said county and State, unlawfully made, erected, set up and arranged, and did cause and procure to be made, erected, arranged and set up, in a certain room and building in said town of Corydon (describing the room and building), a certain partition, elevator, screens, curtains, revolving waiters, screen sash, blind door, blind window, paraphernalia and other devices for the purpose of unlawfully selling, bartering and giving away intoxicating liquors in less quantities than five gallons at a time, and for the purpose of con-

ducting unlawfully a saloon in said room and building; that they did unlawfully and injuriously, at said date, maintain and permit, and from thenceforth up to and including the time of the making of this presentment do maintain, permit and operate in said room and building in said town the said partition, elevator, screens, etc., for the purpose of unlawfully and illegally selling, bartering and giving away intoxicating liquors in less quantities than five gallons, and for the purpose of unlawfully conducting a saloon; that by reason of said partition, elevator, screens, etc., intoxicating liquors in less quantities than five gallons at a time are sold, bartered and given away in said room and building, and have been so sold, bartered and given away since the 1st of August, 1902, including Sundays and legal holidays, up to and including the time of the making of this presentment; that said sales are made with the knowledge and consent of said defendants; that they have absolute control over said room in which said devices before described are located, and in which said illegal business is conducted; that said sale of intoxicating liquors can be made with impunity, and said saloon business can be conducted without fear on the part of the defendants of the consequences of selling intoxicating liquors without license, for the reason that said partition, elevators, etc, so screen and hide the seller of intoxicating liquors from the view of the purchaser and view of the public that it is impossible to ascertain who is the seller; that no person has a state license to sell intoxicating liquors in said room and building; that by reason of said partition, elevator, screens, etc., by means of which illegal sales of liquors have been made by and with the consent of the defendants, and by reason of the existence of said illegal saloon maintained by and with the consent of the defendants, and each of them, "men are made drunken, and are seen in and about said building, and on the public streets of said Corydon. Men congregate in crowds in and in front of said room and building before described, blocking the sidewalk, using

profane, obscene and indecent language, all to the damage, inconvenience, annoyance and injury of divers inhabitants situated and dwelling in said town of Corydon, and near unto said room and building above described. It is further alleged that the people of the town of Corydon are of a high grade of morality, and that, until the acts complained of, there was no place in said town where intoxicating liquors could be purchased for a beverage; that, by reason of the absence of saloons, Corydon was a more desirable place for business and residence purposes, and that by reason of the acts complained of the town is less desirable either for business or residence purposes, and that said illegal saloon is a public nuisance, contrary to the form of statute, etc. It is also alleged that said room and building containing said structures and devices is called and is known to the inhabitants of the town of Corydon as a "blind pig," or "blind tiger."

1. There is no statute in this State making a place where intoxicating liquors are sold a nuisance *per se,* but even a license to sell intoxicating liquors does not protect the holder from the consequences of unlawful practices on the premises, and persons so offending may be liable to a property owner individually damaged. *Haggart* v. *Stehlin* (1894), 137 Ind. 43, 22 L. R. A. 577; *Tron* v. *Lewis* (1903), 31 Ind. App. 178; *Kissel* v. *Lewis* (1901), 156 Ind. 233. In Indiana there are no crimes except those defined by statute. *Stephens* v. *State* (1886), 107 Ind. 183, and cases cited.

2. Section 2153 Burns 1901, §2065 R. S. 1881, provides that every person who shall erect and maintain any public nuisance, to the injury of any part of the inhabitants of the State, shall be fined, etc. "The term 'public nuisance,' as used in the statute before quoted [§2153, *supra*], providing a punishment for maintaining a public nuisance, has a well-defined legal meaning and sufficiently designates

the class of prohibited acts." Gillett, Crim. Law (2d ed.), §640; *Burk* v. *State* (1867), 27 Ind. 430. A nuisance is a public nuisance if it annoys such part of the public as necessarily comes in contact with it. *Hackney* v. *State* (1856), 8 Ind. 494; *Moses* v. *State* (1877), 58 Ind. 185; *Acme Fertilier Co.* v. *State* (1904), *ante,* 346; *Paragon Paper Co.* v. *State* (1898), 19 Ind. App. 314.

3. "It is well known that a keeper of a 'blind tiger', in its general acceptation and understanding, means a person engaged in the unlawful sale of intoxicating beverages." *Rush* v. *Commonwealth* (1898) (Ky.), 47 S. W. 586; Standard Dict. "The words used in an indictment or information must be construed, in their usual acceptation, in common language." §1805 Burns 1901, §1736 R. S. 1881.

4. The indictment charges, in terms, the keeping of a public nuisance, under which evidence may be properly introduced to show that the public who necessarily came in contact with the conditions set out were annoyed. It avers that the defendants, at the time of the acts charged, had control over said room and building; that they were in control at the time of the making of the presentment. The mere erection of screens and other devices described in the indictment can not be said to be, as a matter of law, a nuisance, no matter what the motive of their erection and maintenance may be; but the indictment avers that, by means of said devices, liquors were sold in violation of law, and it is further averred that men are made drunken, and are seen in and about said building and on the public streets of said town of Corydon; that men congregate in crowds in and in front of said room and building before described, blocking the sidewalk, using profane, obscene and indecent language, all to the annoyance, etc. The gravamen of the charge is that the alleged public intoxication, and open, notorious and continuous violation of law, are offenses to decency. A statute of the state of Georgia makes any place

commonly known as a "blind tiger," where intoxicating liquors are sold in violation of law, a common nuisance. *Cannon* v. *Merry* (1902), 116 Ga. 291, 42 S. E. 274.

5. In *Legg* v. *Anderson* (1902), 116 Ga. 401, 42 S. E. 720, the court holds that a "blind tiger" is a public nuisance independent of said statute. This expression from the learned court, although not binding here, is commended by the able reasoning of the opinion. The maintenance of a public place equipped with devices intended to make the violation of the law comparatively safe from criminal prosecution, and in which it is well known the law is systematically violated, is certain to induce the lamentable results and exhibitions designated in the indictment, and which can only be "offensive to the senses." Such results are not only a nuisance, but a menace to the peace of the community.

The court erred in sustaining the motion to quash the indictment, and the record shows, notwithstanding the claim of the appellee to the contrary, that the State excepted, in substantial compliance with the law, to said action of the court.

The judgment is reversed, with instructions to overrule the motion to quash.

Robinson, P. J., Black, Wiley, Roby and Myers, JJ., concur.